| | | |
|---|---|---|
| KENITA HONESTY, *Plaintiff* | : : : | IN THE COURT OF COMMON PLEAS DAUPHIN COUNTY, PENNSYLVANIA |
| v | : : | 2018-CV-5830-CV |
| LIBERTY MUTUAL INSURANCE *Defendant* | : : : | CIVIL ACTION - LAW **Jury Trial Demanded** |

## PLAINTIFF'S MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT

AND NOW this 14th day of February, 2020, comes the Plaintiff, Kenita Honesty and respectfully avers as follows:

### I. PARTIES AND BACKGROUND

1. The Plaintiff, Kenita Honesty, is an adult individual residing at 5001 Royal Avenue, Harrisburg, Dauphin County, Pennsylvania, 17109.

2. The Defendant, Liberty Mutual Insurance Company, is a corporate entity with a registered office located within the Commonwealth of Pennsylvania at 5000 Ritter Road, Mechanicsburg, Cumberland County, Pennsylvania, 17055.

3. This action was commenced by the filing of a writ of summons on August 30, 2018 in the Office of the Prothonotary of the Dauphin County Court of Common Pleas.

4. It is believed and therefore averred, that this writ of summons was served by sheriff on September 12, 2018.[1]

5. It is believed and therefore averred, that the Court of Common Pleas of Dauphin County has jurisdiction over this matter as the Defendant has issued an insurance

---

[1] The Defendant likewise has an address listed on the contract with Defendant at "Geico Insurance Agency, Inc, 1 Geico Blvd., Fredericksburg, VA 22412" and on their website at 175 Berkeley Street, Boston, MA 02116. The sheriff served the Defendant via certified mail at these locations as well.

policy for the Plaintiff in this jurisdiction. 42 Pa.C.S.A. § 5322 (relating to bases of personal jurisdiction over persons outside the Commonwealth).

6. It is believed and therefore averred, that the Plaintiff entered into a homeowner's policy insurance contract (hereinafter "contract" or "policy") with the Defendant on or about June 10, 2017, which was effective from June 10, 2017 through June 10, 2018 for the dwelling located at 5001 Royal Avenue, Harrisburg, PA (hereinafter "dwelling"). (*See* true and correct copy of contract attached hereto as Exhibit "1," Policy No. ending 4072).

7. It is believed and therefore averred, that, at all times, the Plaintiff made all appropriate payments to Defendant to keep her policy in good standing.

8. It is believed and therefore averred, that on or about September 15, 2017 (hereinafter "occurrence date") a loss occurred due to an accidental fire that originated in the Plaintiff's kitchen.

9. It is believed and therefore averred, that there was a "loss" occasioned by the fire, which included damage to the residence premises and property as defined by the contract. *See* Exhibit "1" at pp. 8-9.

10. It is believed and therefore averred, that the policy terms cover this type of loss. (*See* Exhibit "1" at pp. 3, 8-9; for ease of identification all the page of the policy have been sequentially numbered).

11. It is believed and therefore averred, that as a result of the fire, damage occurred to various parts of the dwelling structure, including but not limited to, the kitchen, loft bedroom and loft closet, upstairs bedroom, stairway to upstairs, bathroom, living room, laundry room dining room and closet, downstairs bedroom, water heater closet,

flooring, carpeting and rear of home (*See* C&Z appraisal estimate attached hereto as Exhibit "2;" 27 pages).

12. It is believed and therefore averred, that there was extensive damage to the contents of the home including, but not limited to clothing, furniture, kitchen appliances, and other household goods. (*See* true and correct copy of contents claim submitted to Liberty's claim adjuster attached hereto as Exhibit "3;" 7 pages).

13. It is believed and therefore averred, that as a part of the damage to the internal structure and contents of the home, extensive cleaning was required. (*See* Exhibit "4;" 2 pages).

14. It is believed and therefore averred, that Liberty was made aware of the fire within hours of the occurrence.

15. It is believed and therefore averred, that the occurrence left the home fully uninhabitable as there was extensive fire and smoke damage to most of the main living areas throughout the home as well as the contents.

16. It is believed and therefore averred, that Liberty, through its employees, agents, and lawful designees was advised as to the severity of the fire and the lack of appropriate living accommodations for the Plaintiff and her family.

17. It is believed and therefore averred, that the contract covers Plaintiff's "lose of use" for the residence during the time of repairs. (*See* Exhibit "1" at p. 11- "**COVERAGE D- Loss of Use**").

18. It is believed and therefore averred, that despite the contract provision of an "Additional Living Expense" for an uninhabitable premises, the Defendant through

its lawfully designated agent, failed to provide reasonable alternate living accommodations from September 15, 2017 through November 30, 2017.

19. It is believed and therefore averred, that Liberty failed to even visit the residence to assess the damage until September 28, 2017.

20. It is believed and therefore averred, that Liberty's designated employee, agent, or designee, Bret Reitz, provided an initial structural or dwelling estimate of loss of $4,089.94. (*See* true and correct copy of Liberty loss estimate attached hereto as Exhibit "5;" 9 pages).

21. It is believed and therefore averred, that Plaintiff was in disagreement with the structural damage estimate and Liberty thereafter retained "Mark 1 Restoration, Inc." (hereinafter "Mark 1") to provide another estimate as its designated agent.

22. It is believed and therefore averred, that Mark 1 provided an estimate dated November 20, 2017 in which they estimated the structural damages at $13,122.15. (*See* attached hereto as Exhibit "5;" 24 pages).

23. It is believed and therefore averred, that Mark 1 was requested to do the work by the Plaintiff on or about November 20, 2017 based upon their submission. *See* Exhibit "5."

24. It is believed and therefore averred, that Mark 1 began work at the premises on or about December 4, 2017.

25. It is believed and therefore averred, that it became quickly apparent to the Plaintiff that Mark 1 was not qualified to provide the requested labor in a workmanlike manner.

26. It is believed and therefore averred, that Mark 1 failed or refused to move furniture as set forth in their detailed estimate.

27. It is believed and therefore averred, that Mark 1 removed carpeting and padding by cutting around furniture and the remaining contents of the home, only making the presence of dirt and debris worse than previous.

28. It is believed and therefore averred, that Plaintiff hired a public adjuster, National Adjustment Bureau (hereinafter "NAB") on or about December 11, 2017.

29. It is believed and therefore averred, that NAB terminated Mark 1 on behalf of the Plaintiff on or about December 11, 2017.

30. It is believed and therefore averred, that Mark 1's corporate designee, Fred Tomco, advised NAB's designee, Brian Faleshock, that the Plaintiff and her spouse were "money grubbing dykes."

31. It is believed and therefore averred, that Mark 1 submitted an invoice to Liberty in the amount of $3,007.09, which was paid by Liberty on or about February 8, 2018. (*See* Exhibit "7;" 6 pages).

32. It is believed and therefore averred, that Mark 1 failed to submit an invoice for work performed on the dwelling to Liberty in the amount of $1,674.11. (*See* Exhibit "8;" 10 pages).

33. It is believed and therefore averred, that Liberty has been notified regarding the outstanding claim by NAB on behalf of the Plaintiff for services rendered and Liberty has either failed or refused to pay. (*See* email chain among NAB, Dan Baron of Liberty, and Mark 1 between April 19 to April 22, 2018 and attached hereto as Exhibit "9;" 13 pages).

34. It is believed and therefore averred, that as a result of Defendant's failure or unwillingness to pay Mark 1, Mark 1 has instituted a suit against Plaintiff to recover $1,174.11, plus costs relating to the suit. (*See* cover letter and MDJ complaint with attachment, attached hereto as Exhibit "10;" 4 pages).

35. It is believed and therefore averred, that Liberty has been previously notified regarding the contents claim and the claim for the appropriate cleaning of the remaining contents of the home.

36. It is believed and therefore averred, that as a result of the fire, the contents of the home had to be removed by C&Z and stored in two pods located on the property site.

37. It is believed and therefore averred, that there will be additional charges for the use of the pods and the storage of the contents in said pods.

38. It is believed and therefore averred, that Plaintiff has not yet been provided an invoice for the use of the pods supplied by "Mobile Mini," but will at some future point and is requesting payment for said pods from Liberty.

39. It is believed and therefore averred, that C&Z has indicated to the Plaintiff that there is an overage that will be due for the structural damage that was repaired in the home. Plaintiff does not yet know this amount owed.[2]

40. It is believed and therefore averred, that the Plaintiffs had an ADT alarm system installed in their home that was destroyed or rendered "unusable" by the fire and/or smoke according to ADT.

---

[2] This suit was commenced within one (1) year as required by the terms of the contract. Accordingly, as of date, not all expenses have been compiled.

41. It is believed and therefore averred, that the Plaintiffs will have a loss for this structural item that will be approximately $1,239.96. (*See* Exhibit "12" attached hereto).

42. It is believed and therefore averred, that Liberty should reimburse Plaintiff for the replacement of this system under the terms of the contract.

43. It is believed and therefore averred, that as a direct result of the loss, the Plaintiff and her family were provided with an alternative living arrangement by Liberty from November 30, 2017 to October 31, 2018.

44. It is believed and therefore averred, that reasonable expenses were incurred by the Plaintiff and her family as a result of the required relocation, including, but not limited to the purchase of new clothing, storage containers, food, and mileage to and from the alternative living arrangement provided by Liberty to other required travel destinations, such as the grocery store, laundry mat, and work. (*See* Exhibit "13;" 18 pages)

45. It is believed and therefore averred, that Liberty should reimburse Plaintiff for said expenses under the terms of the contract.

46. It is believed and therefore averred, that on or about both February 28, 2018 and June 25, 2018 the Plaintiff's home was broken into.

47. It is believed and therefore averred, that Liberty denied off-site climate control storage units and the units were placed in Plaintiff's front yard and driveway although it was demanded by the Public Adjustor that the personal items be stored in off-site a climate controlled storage facility. (*See* Exhibit "14;" 3 pages)

48. It is believed and therefore averred, that the storage units caused sufficient damage to Plaintiff's front yard and driveway. (*See* Exhibit "15;" 2 pages)

49. It is believed and therefore averred, that on or about October 29, 2018, the Plaintiff and her family were forced out of their hotel although the work on the property was not completed and still did not have a stove.

50. It is believed and therefore averred, that on or about October 29, 2018 to November 19, 2018, the Plaintiff and her family lived with family members until the work was adequate enough to move back into the property.

51. It is believed and therefore averred, that on or about November 19, 2018, the Plaintiff and her family moved back into the property and completed post construction cleanup, cleaned all personal contents, and discarded damaged contents. (*See* Exhibit "16;" pages)

52. It is believed and therefore averred, that while the Plaintiff's storage units were being unpacked, mice were brought into the property and found to have caused damage to contents. (*See* Exhibit "16;" 4 pages)

53. It is believed and therefore averred, that because Liberty denied off-site climate-controlled storage units Plaintiff's personal contents were damaged due to the mice and exposure to extreme weather conditions. (*See* Exhibit "17;" 12 pages)

54. It is believed and therefore averred, that on or about May 21, 2019 (one year and eight months after the fire) Liberty came to inspect the Plaintiff's property.

55. It is believed and therefore averred, that to-date the Plaintiff and her family are still living in the property without a stove and has come out of pocket thousands of dollars to pay for food, clothes, mattresses, electronics, etc. (*See* Exhibit "18;" 1 paget)

56. It is believed and therefore averred, that there are outstanding bills from the contractor that Liberty refuses to pay.

57. It is believed and therefore averred, Plaintiff's home insurance has increased from $1,784 to $3,159 a year.

## **COUNT I- BREACH OF CONTRACT**

58. Paragraphs one (1) through fifty-seven (57) are incorporated herein as if set forth below in full.

59. It is believed and therefore averred, that the requisite contractual relationship between the Plaintiff and Defendant was in existence at the time of the loss on September 15, 2017.

60. It is believed and therefore averred, that Defendant has breached its contract with Plaintiff by failing or refusing to pay the balance due to Mark 1, with appropriate credit for the payment of the deductible by the Plaintiff.

61. It is believed and therefore averred, that Defendant has breached its contract with the Plaintiff by failing or refusing to pay for any of the damage to the contents of the dwelling despite being provided with a list of contents and values for approximately one (1) year.

62. It is believed and therefore averred, that the Defendant has breached its contract with the Plaintiff by failing or refusing to pay for the appropriate cleaning of the contents of the dwelling despite being provided with such list for approximately one (1) year.

63. It is believed and therefore averred, that Defendant has breached its contract with Plaintiff by failing or refusing to pay the balance due to C&Z.

64. It is believed and therefore averred, that the Defendant has breached its contract with the Plaintiff by failing or refusing to pay for the yard damage caused by the storage units.

65. It is believed and therefore averred, that the Plaintiff has or will continue to incur losses based upon the fire at the insured dwelling that Plaintiff will provide to Liberty, such as use of storage pods, expenses related to the relocation from the dwelling to an ALE, travel expenses, food expenses, the loss of their ADT system, and overages due to C&Z.

66. It is believed and therefore averred, that such losses are covered by the contract in existence at the time of the loss.

**WHEREFORE**, the Plaintiff demands judgment against the Defendant for all amounts due under the terms of the contract and in an amount exceeding the mandatory arbitration limits, plus such other relief as the Court deems just and appropriate.

## COUNT II- BAD FAITH

67. It is believed and therefore averred, that the Defendant through its lawfully designated employees, agents, or designees either willfully, knowingly or intentionally breached a known duty of good faith and fair dealing through a motive of self-dealing or ill will by failing to process all of Plaintiff's claims in a timely fashion.

68. It is believed and therefore averred, that the Defendant through its lawfully designated employees, agents, or designees either willfully, knowingly or

intentionally breached a known duty of good faith and fair dealing through a motive of self-dealing or ill will by failing to pay all of Plaintiff's claims in a timely fashion.

69. It is believed and therefore averred, that the Defendant through its lawfully designated employees, agents, or designees either willfully, knowingly or intentionally breached a known duty of good faith and fair dealing through a motive of self-dealing or ill will by failing to perform a prompt and adequate investigation in order to pay Plaintiff's claims in a timely fashion.

70. It is believed and therefore averred, that the Defendant through its lawfully designated employees, agents, or designees either willfully, knowingly or intentionally breached a known duty of good faith and fair dealing through a motive of self-dealing or ill will by failing to provide the Plaintiff with an alternative living arrangement for a period exceeding two (2) months, despite notification.

71. It is believed and therefore averred, that the Defendant through its lawfully designated employees, agents, or designees either willfully, knowingly or intentionally breached a known duty of good faith and fair dealing through a motive of self-dealing or ill will by failing to provide prompt, adequate, and effective insurance protections for the Plaintiff and in so doing, caused severe emotional distress to her and her family since September 15, 2017.

**WHEREFORE**, the Plaintiff demands that the Defendant be ordered to pay punitive damages according to statute, together with interest at prime rate plus 3%, attorney's fees, court costs and such other relief as the Court may deem just and appropriate.

Respectfully submitted,

Kenita Honesty

Date: 2.14.2020

By _____
Kenita Honesty
5001 Royal Ave
Harrisburg, PA 1701